IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PETER SEYMOUR,

Plaintiff,

v.

GEORGIA KOSTOHRYZ, DEBRA TIDQUIST, and DARIN KRZYZANOWSKI,

Defendants.

OPINION and ORDER

22-cv-170-jdp

---

Plaintiff Peter Seymour, proceeding without counsel, alleges that defendants at Jackson Correctional Institution (JCI) deprived him of medical care for a right knee injury and related pain. Seymour is proceeding on Eighth Amendment medical care and Wisconsin-law medical negligence claims against defendants.

Defendants move for summary judgment. Dkt. 48. The evidence shows that defendants examined Seymour, diagnosed him with right knee conditions, and provided physical therapy, knee support, and other forms of treatment. Seymour disputes the adequacy of his treatment. But the Eighth Amendment doesn't require prison staff to provide the inmate's preferred treatment or the best care possible. The evidence shows that defendants addressed Seymour's complaints with appropriate care.

I will grant summary judgment on Seymour's Eighth Amendment claims. I will relinquish jurisdiction over his state-law medical negligence claims.

UNDISPUTED FACTS

I begin with a word about the summary judgment evidence. The court affords litigants proceeding without counsel some leeway, recognizing that their submissions usually lack the formality and polish of the work of a lawyer. But all litigants must comply with the court's orders and rules. *See Allen-Noll v. Madison Area Tech. Coll.*, 969 F.3d 343, 349 (7th Cir. 2020).

At summary judgment, this court requires the moving party, here defendants, to set out a statement of proposed facts with citations to admissible supporting evidence. See the attachment to Dkt. 13. The party opposing the motion, here Seymour, must state whether each fact is disputed, and if it is, support the opposition with a citation to admissible evidence. Seymour purports to object to many of defendants' proposed facts, but some of his objections lack citations to admissible evidence, and others contain citations to evidence that doesn't directly dispute the proposed facts. *See* Dkt. 58 ¶¶ 37, 45 55, 64, 71–73, 75, 79, 83. At times, Seymour simply argues about what inferences should be drawn from that evidence. *See id.* ¶¶ 24, 25, 29, 53. I will accept defendants' proposed facts as undisputed except where it's clear from Seymour's verified complaint or declaration that he disputes a proposed fact on the basis of admissible evidence.

With that background, the following facts are undisputed except where noted.

Seymour is now incarcerated at Redgranite Correctional Institution, but the events at issue occurred when he was incarcerated at Jackson Correctional Institution (JCI). Georgia Kostohryz worked at JCI as nurse clinician, and Darin Krzyzanowski was a physical therapist. Debra Tidquist worked for the Department of Corrections as an advanced practice nurse prescriber, and she provided care to Seymour at JCI.

**A. Kostohryz's medical care**

The health services unit (HSU) received a health services request (HSR) from Seymour on January 18, 2017. Seymour complained that his right knee had been swollen for about two months, hurt badly, and locked up while he walked. That day, Kostohryz examined Seymour. Seymour complained of an achy right knee with pain at 6/10 at that time and ranging from a tolerable 3/10 to 7/10. Kostohryz evaluated Seymour using the "musculoskeletal nursing protocol"[1] and diagnosed him with an alteration in mobility. Kostohryz's plan of care was to use a knee brace for support and take ibuprofen as needed. Seymour says that he asked Kostohryz for ibuprofen for right knee pain and that she told him that he would have to purchase it from the canteen. Dkt. 59 ¶ 6. Kostohryz educated Seymour on using the knee brace and ibuprofen, and she advised him to avoid exercise that involved cutting.

HSU staff received an HSR from Seymour on February 11, 2017. Seymour complained that his right knee was swollen and painful and said that he wouldn't see Kostohryz because she had dismissed his concerns at the January 18 visit. That day, Kostohryz and another nurse saw plaintiff. Defendants say that the other nurse performed the examination because of Seymour's concerns about Kostohryz, and that Kostohryz witnessed the examination. Seymour says that Kostohryz performed the examination. That dispute is immaterial: either way, Kostohryz documented that Seymour: (1) was wearing his knee brace and had a normal gait; (2) had no swelling or redness in his knee; (3) had full range of motion in his knee; and (4) received instructions on stretching from the other nurse. Dkt. 54-1 at 27. Seymour disputes the accuracy of some Kostohryz's observations, stating that he had "obvious" knee swelling

[1] This protocol "provides procedures for evaluating musculoskeletal injuries." *Smith v. Warner*, No. 15-cv-633-bbc, 2017 WL 4221094, at *2 (W.D. Wis. Sept. 21, 2017).

and walked with a limp. Dkt. 1 ¶ 15; Dkt. 59 ¶ 14. Seymour also says that the other nurse didn't give instructions on stretching because she didn't perform the examination. *See* Dkt. 59 ¶ 9. Kostohryz didn't see Seymour for any other sick calls.

**B.  Tidquist's and Krzyzanowski's medical care**

Providers and physical therapists at JCI may authorize restrictions for up to six weeks for low bunks or tiers for acute reasons, such as recovering from surgery or illness. Dkt. 59-12 at 4. Longer placements usually require approval by the Special Needs Committee.

In 2017, there was a "Chronic Pain Team" at JCI. The Chronic Pain Team used a multidisciplinary approach to manage chronic pain. The Chronic Pain Team usually, but not always, consisted of Tidquist, Krzyzanowski, and Kostohryz.

On October 3, 2017, a Chronic Pain Team consisting of Tidquist and Krzyzanowski saw Seymour about complaints of chronic right knee pain. Seymour said that he had atrophy in his right quadricep, and Tidquist noted the atrophy. Tidquist performed valgus varus and negative drawer tests and found no damage to Seymour's main knee ligaments. But the drawer test indicated that Seymour had pain in his quadricep tendon. Tidquist diagnosed Seymour with right quadricep tendonitis. Tidquist and Krzyzanowski determined that physical therapy was the best plan of care, and they advised Seymour against doing leg lifts.

Tidquist and Krzyzanowski say that they don't recall Seymour asking for restrictions for a low bunk and tier at this visit. Dkt. 52 ¶ 31; Dkt. 53 ¶ 33. Seymour says that he told Tidquist and Krzyzanowski that he experienced severe pain when climbing stairs and wanted those accommodations. Dkt. 1 ¶ 22; *see* Dkt. 59 ¶¶ 24, 34.

Krzyzanowski started physical therapy with Seymour ten days later. The plan was to rest the injured quadricep and strengthen the surrounding muscles. During sessions,

Krzyzanowski and Seymour worked on hamstring stretching and hip strengthening, and Seymour had a home exercise program. Krzyzanowski advised Seymour on activities to avoid while recovering, such as basketball and heavy weightlifting. Seymour received ice, a TheraBand, and a knee sleeve. Seymour also had Tylenol for pain, though he says that it was recommended for ear pain.

On February 8, 2018, Krzyzanowski determined that physical therapy wasn't working, which indicated a partial tear instead of tendonitis. Dr. Liu ordered an MRI, which revealed a small peripheral medial meniscal tear. An offsite sports medicine specialist saw Seymour and recommended: (1) physical therapy; (2) avoiding athletic activities; (3) resting, icing, and elevating the knee; and (4) Tylenol for pain. Dkt. 54-1 at 40. In August 2018, Seymour had surgery to repair the tear.

I will discuss additional facts as they become relevant to the analysis.

## ANALYSIS

### A. Eighth Amendment medical care claims

The Eighth Amendment prohibits prison officials from consciously disregarding the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish a medical care claim, Seymour must show that he had an objectively serious medical condition that defendants consciously disregarded. *See Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017). Seymour's partial meniscal tear and related mobility issues and pain are serious medical needs. *See Walker v. Benjamin*, 293 F.3d 1030, 1039–40 (7th Cir. 2002).

The issue is whether defendants consciously disregard that need. Conscious disregard requires that defendants are subjectively aware of that need. *See Cesal*, 851 F.3d at 721. That

means that defendants know of facts from which the inference could be drawn that a substantial risk of serious harm exists, and they actually draw that inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Conscious disregard involves intentional or reckless conduct, not mere negligence. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010).

The Eighth Amendment entitles prisoners to "adequate medical care," that is, "reasonable measures to meet a substantial risk of serious harm." *See Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). The Eighth Amendment doesn't require "specific care" or "the best care possible." *See id.*; *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Seymour's disagreement with defendants about the proper course of treatment, by itself, isn't enough to show conscious disregard. *See Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).

Ignoring a prisoner's request for medical assistance outright can be enough to show conscious disregard of medical needs. *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (en banc). If a medical professional has provided some care for a prisoner's condition, she consciously disregards his serious medical need only if her care is so inadequate that it demonstrates an absence of professional judgment, that is, that no minimally competent professional would have responded in that way in the circumstances. *See Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 763 (7th Cir. 2021); *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998).

**1. Medical care claim against Kostohryz**

Seymour contends that Kostohryz knew that he had a painful right knee but refused to offer any treatment during his appointments with her. This contention is not supported by evidence.

Kostohryz did not disregard Seymour's knee problems at the January 18, 2017, visit. Kostohryz evaluated Seymour using a standard nursing protocol, diagnosed him with an alteration in mobility, provided a knee brace, advised him that he could obtain ibuprofen at the canteen, and educated him on using the knee brace and ibuprofen. Seymour says that the knee brace was a compression stocking that didn't provide structural support. Dkt. 57 at 7; Dkt. 59 ¶ 15. But Seymour adduces no evidence that Kostohryz knew that the knee brace would be inadequate to treat his problem.

Seymour faults Kostohryz for not giving him ibuprofen at the January 18 visit. Seymour says that he told Kostohryz that it would take him two weeks to obtain it, but that she said that the HSU wasn't "in the habit of" giving out free medication if it knew a prisoner could purchase it. Dkt. 59 ¶ 6. But Kostohryz documented that Seymour had ibuprofen, Dkt. 54-1 at 25, and Seymour concedes that she "assumed" that he had it, Dkt. 58 ¶ 24. In any case, Kostohryz provided other forms of treatment. Seymour's mere disagreement with the adequacy or completeness of Kostohryz's care doesn't establish a violation of the Eighth Amendment. *See Snipes*, 95 F.3d at 591; *Forbes*, 112 F.3d at 267.

Seymour contends that Kostohryz's failure to give him ibuprofen violated DOC policy stating that health care providers "shall not delay medically necessary [over-the-counter] medications by directing inmates to purchase them from canteen." Dkt. 59-2 at 4. "But [a] violation of a prison policy alone does not . . . suggest [conscious disregard]." *Schroeder v. Sawall*, 747 F. App'x 429, 431 (7th Cir. 2019).

Seymour also contends that Kostohryz's failure to refer him to a provider violated Chronic Pain Team protocol requiring a provider to be assigned to the patient. *See* Dkt. 59 ¶ 31; Dkt. 59-3 at 2. But this protocol didn't apply to Seymour when Kostohryz

treated him: it's undisputed that the Chronic Pain Team first saw him in October 2017, after Kostohryz had finished directly treating him. *See* Dkt. 50 ¶ 75; Dkt. 58 ¶ 75. Again, a deviation from the protocol alone wouldn't show conscious disregard. *See Schroeder*, 747 F. App'x at 431.

The parties dispute some of the details of Kostohryz's care at the February 11, 2017, examination. But it's undisputed that the examination occurred the same day that the HSU received Seymour's HSR, and that Kostohryz was at least present. So Kostohryz wasn't ignoring Seymour's complaint of continuing knee problems. It's undisputed that Seymour had full range of motion in his knee, that his knee wasn't red, and that he was wearing knee support. On defendants' motion for summary judgment, I must accept Seymour's contention that Kostohryz inaccurately recorded that Seymour's knee was not swollen, that he walked normally, and that he received stretching exercises. But an inaccurate medical record alone doesn't prove negligence, much less conscious disregard that would violate the Eighth Amendment. *See Berry*, 604 F.3d at 440; *Francois v. Mokrohisky*, 67 Wis. 2d 196, 201 (1975) (a provider's mistake alone doesn't prove medical negligence). Taking the circumstances as a whole, no reasonable jury could find that Kostohryz actually believed that Seymour's original plan of care was ineffective during the February 11 visit. *Cf. Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000) (courts must consider the "totality" of a prisoner's care when deciding whether a medical professional has consciously disregarded his serious medical need).

Seymour says that Kostohryz deprived him of medical care at both visits because she thought that he was faking his knee injury. Dkt. 57 at 5, 7; Dkt. 59 ¶ 33. Seymour even says that Kostohryz told him that she thought he was faking, though that alleged encounter occurred more than six months after Kostohryz's final examination of him. *See* Dkt. 1 ¶ 21. Regardless of her view of Seymour's potential faking or exaggeration, she still diagnosed and

treated him. *See Harper v. Santos*, 847 F.3d 923, 928 (7th Cir. 2017); *Brown v. Dittmann*, No. 17-cv-278-jdp, 2017 WL 3772723, at *3 (W.D. Wis. Aug. 30, 2017). And if Kostohryz did not actually believe that Seymour had a serious medical need, then Seymour's claim Eighth Amendment claim would fail for that reason.

Along those lines, Seymour also contends that Kostohryz displayed a "hostile and dismissive" attitude toward his knee concerns. Dkt. 57 at 4 (citing *Hayes v. Snyder*, 546 F.3d 516 (7th Cir. 2008)). But *Hayes* is not about a care provider's attitude or demeanor. In *Hayes,* there was evidence that the doctor actually ignored the prisoner's "repeated reports of severe, progressively worsening pain" and made "troubling" statements that showed both a lack of concern for the prisoner's severe pain and medical incompetence. *See id.* 546 F.3d at 525–26. Here there's no evidence that Kostohryz displayed personal hostility toward Seymour. The alleged fact that she thought that he was faking isn't enough to support that inference. *See Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866 (7th Cir. 2013) (one potentially callous statement isn't enough to show conscious disregard where doctor was treating prisoner's medical condition); *cf. Harper*, 847 F.3d at 928.

Seymour's other arguments provide no reason to withhold summary judgment. Seymour faults Kostohryz for canceling medical appointments, thus causing delays in his treatment. *See* Dkt. 57 at 1, 5. But I dismissed this claim in my screening order *See* Dkt. 4 at 3. Seymour also faults Kostohryz for not providing further treatment after the February 11 visit, and for misdiagnosing his knee condition. Dkt. 57 at 7, 10. But Seymour "may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012). In any case, a misdiagnosis may be negligence, but it is not conscious disregard. *See Estelle*, 429 U.S. at 106.

In sum, Seymore has not adduced evidence from which a reasonable jury could find that Kostohryz consciously disregarded Seymour's serious medical need. I will grant defendants' motion for summary judgment on Seymour's medical care claim against Kostohryz.

**2. Medical care claim against Tidquist and Krzyzanowski**

Seymour alleges that Tidquist and Krzyzanowski didn't investigate whether he could obtain low-bunk and low-tier restrictions, and they knew that he would continue to suffer knee pain unless he received those accommodations. The evidence shows that Tidquist and Krzyzanowski did not ignore Seymour's needs, and that their care was at least minimally competent, even if it wasn't the care Seymour preferred.

On October 3, 2017, Tidquist and Krzyzanowski saw Seymour about his complaints of chronic right knee pain, performed tests, diagnosed him with tendonitis, determined that physical therapy was the best plan of care, and advised him against doing leg lifts. During physical therapy, Seymour received more care, including: (1) stretching and strengthening exercises; (2) a home exercise plan; (3) a TheraBand; (4) a knee sleeve; and (5) education on athletic activities to avoid. Even if Seymour's Tylenol was originally prescribed for ear pain, it's a reasonable inference that it would help his knee pain too. And ibuprofen was available at the canteen in any case. This plan of care was similar to the care that the sports medicine specialist recommended even *after* Seymour was diagnosed with a meniscal tear. *See* 54-1 at 40.

Seymour faults Tidquist and Krzyzanowski for not ordering restrictions for a low bunk and low tier even though he asked for those accommodations and told them that climbing stairs caused him severe pain. He notes that they documented that stairs aggravated his condition. *See* Dkt. 54-1 at 135, 138. But it's undisputed that Seymour could climb stairs one leg at a time with his uninjured leg, and unincarcerated people with knee problems commonly

must climb stairs. *See* Dkt. 50 ¶ 64; Dkt. 58 ¶ 64; *cf. Rhodes v. Chapman*, 452 U.S. 337, 349 (1981) ("[T]he Constitution does not mandate comfortable prisons."). Seymour says that he had to jump onto his top bunk from a desk or chair, Dkt. 59 ¶ 22, but there's no evidence that Tidquist or Krzyzanowski knew that. In sum, Tidquist and Krzyzanowski treated Seymour's knee problems, and he adduces no evidence that they thought that not issuing a low-bunk or low-tier restriction would worsen his knee problems.

Seymour says that Tidquist and Krzyzanowski thought he was faking his injury. *See* Dkt. 57 at 8–9; Dkt. 59 ¶ 25. As I've explained, even if they thought he was faking, they provided appropriate care for his knee problems. *See Harper*, 847 F.3d at 928; *Brown*, 2017 WL 3772723, at *3.

Along those lines, Seymour notes that Tidquist referred to both his right and left knees during the October 3 examination, and he says that her irregular record-keeping shows that she didn't take his concerns seriously. *See* Dkt. 59 ¶ 34. Seymour describes obvious typos; it's clear that Tidquist and Krzyzanowski examined his complaints of chronic right knee pain, diagnosed him with tendonitis in that knee, and prescribed physical therapy for that condition. *See* Dkt. 54-1 at 23, 135–38. Again, an inaccurate medical record doesn't prove negligence, much less conscious disregard. *See Berry*, 604 F.3d at 440; *Francois*, 67 Wis. 2d at 201.

Seymour contends that Tidquist and Krzyzanowski delayed his medical treatment, failed to order an MRI, and misdiagnosed his knee condition. But I dismissed the first allegation on screening, Dkt. 4 at 5–6, and Seymour first raised the other allegations in his brief in opposition. Again, mere misdiagnosis or failure to order diagnostic testing doesn't show conscious disregard. *See Estelle*, 429 U.S. at 106–07.

In sum, no reasonable juror could find that Tidquist or Krzyzanowski consciously disregarded Seymour's serious medical need. I will grant defendants' motion for summary judgment on Seymour's medical care claim against them.

Seymour asks for court assistance in recruiting counsel to help him conduct more discovery. But the court already denied Seymour's motion to compel discovery, and he hasn't shown that further discovery is necessary to oppose defendants' motion. *See* Dkt. 56; Dkt. 57 at 11–12. I will deny this request.

**B. State-law medical negligence claims**

The recommended practice is to relinquish jurisdiction over state-law medical negligence claims if all federal claims are dismissed, as they will be here. *See* Dkt. 49 at 21; *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994). Seymour hasn't shown that this court could exercise federal diversity jurisdiction over his medical negligence claims; he fails to allege that he and defendants are citizens of different states and nothing in the record suggests that they are.

Seymour may pursue his negligence claims in state court, subject to Wisconsin statutes of limitations. Those limitations periods have been tolled while this case has been pending, but they will begin again 30 days from now. *See* 28 U.S.C. § 1367(d) ("The period of limitations for any claim asserted under [the court's supplemental jurisdiction] . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.").

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment, Dkt. 48, is GRANTED. Plaintiff's Eighth Amendment claims against defendants Kostohryz, Tidquist, and Krzyzanowski are DISMISSED with prejudice.

2. I decline to exercise supplement jurisdiction over plaintiff's medical negligence claims and therefore those claims are DISMISSED without prejudice.

3. The clerk is directed to recaption defendant Kostohryz as "Georgia Kostohryz" and defendant Krzyzanowski as "Darin Krzyzanowski."

4. The clerk is directed to enter judgment and send plaintiff copies of this order and the judgment.

Entered June 5, 2024.

BY THE COURT:

/s/

JAMES D. PETERSON
District Judge